

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Olga I. Natal Cruz | |
|---|---|
| Recurrida | Apelación |
| v. | 2013 TSPR 67 |
| Santiago Negrón, et al | 188 DPR \_\_\_\_ |
| Peticionarios | |

Número del Caso: AC-2011-121

Fecha: 7 de junio de 2013

Tribunal de Apelaciones:
Región Judicial de:

  Bayamón, Aibonito y Humacao, Panel V

Abogada de la Parte Peticionaria:

  Lcda. Ann Jo. Marie Carrero Figueroa

Abogado de la Parte Recurrida:

  Lcdo. Ricardo Cacho Rodríguez

Materia: Contrato de Seguro — Cláusula Colectiva de Póliza Comercial de Automovil; responsabilidad de compañía aseguradora por actos del arrendatario en ausencia de endoso o inclusión

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Olga I. Natal Cruz | *Certiorari* |
| Recurrida | |
| v. | AC-2011-0121 |
| Santiago Negrón, et al. | |
| Peticionarios | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 7 de junio de 2013.

Por primera vez, tras la aprobación de la Ley Púb. Núm. 109-59, *infra*, tenemos la oportunidad de examinar la controversia siguiente: si bajo la Cláusula Colectiva de una póliza comercial de automóvil -cuyo asegurado nombrado es una empresa de vehículos de alquiler- la compañía aseguradora responde por los daños que ocasionara un arrendatario a un tercero. Esto pues, la compañía aseguradora arguye que el arrendatario no es asegurado bajo los términos, condiciones y exclusiones de la póliza. Añade que tampoco está cubierto por el Contrato de Seguro tras no pagar

AC-2011-121

por un seguro suplementario que le fuera ofrecido con el Contrato de Arrendamiento.

Ante las circunstancias particulares de este caso, concluimos que los términos en los que está redactada la Cláusula Colectiva de la póliza comercial de automóvil examinada incluyen al arrendatario como asegurado; ello a pesar de que el asegurado nombrado de la póliza sea una empresa de vehículos de alquiler y que esta no sea responsable por los actos del arrendatario en virtud de una ley federal. Esto es así ante la ausencia de un endoso o exclusión en la póliza que libere a la aseguradora de responsabilidad cuando un arrendatario renuncia en el contrato de alquiler de auto al pago de una cubierta suplementaria. Por otro lado, tampoco es de aplicación la Cláusula de Exclusión por Responsabilidad Contractual.

**I**

El 27 de marzo de 2007, el Sr. Santiago Negrón (en adelante conductor o señor Negrón) alquiló un automóvil propiedad de la empresa de vehículos de alquiler Enterprise Rent-A-Car Company (en adelante Enterprise o dueño). Para esa fecha, Enterprise contaba con la póliza comercial de automóvil (Business Auto Policy) 09-518-0192957-1/000 emitida por Universal Insurance Company (en adelante Universal o aseguradora)[1] y cuyo acuerdo general de cubierta disponía que:

---

[1] PRERAC, Inc. y/o Enterprise Rent-A-Car Company es el asegurado nombrado de la póliza 09-518-0192957-1/000 emitida por Universal

AC-2011-121

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto". Apéndice de la Petición de *Certiorari*, pág, 61.

En el Contrato de Alquiler Enterprise le ofreció al señor Negrón la opción de comprar un seguro suplementario (*supplemental liability protection*).[2] No obstante, el señor Negrón declinó pagar por este.

El 2 de abril de 2008, la Sra. Olga I. Natal Cruz (en adelante parte recurrida) presentó una acción directa contra Universal por los daños y perjuicios sufridos en un choque vehicular en conformidad con el Art. 20.030(1) de la Ley Núm. 77, *infra*, 26 L.P.R.A. sec. 2003(1).[3] Alegó que el 9 de abril de 2007 sufrió lesiones cuando su vehículo fue impactado por el vehículo de Enterprise mientras era operado por el señor Negrón. Señaló que el señor Negrón era un asegurado adicional bajo la Cláusula Colectiva de la Póliza Comercial de Automóvil 09-518-0192957-1/000 toda vez

---

Insurance Company. Esta tiene vigencia del 1 de agosto de 2006 al 1 de agosto de 2007. Apéndice de la Petición de *Certiorari*, pág. 51.

[2] El Contrato de Alquiler incluye la información siguiente:

> "Optional Products Notice: Our contract offers, for an additional charge, as optional products: damage waiver, personal accident insurance and supplemental liability protection. Before deciding whether to purchase any of these products, you may wish to determine whether your personal insurance or credit card provides you coverage during the rental period. The purchase of any of these products is not required to rent vehicle." Apéndice del *Certiorari*, pág. 94.

En el expediente no consta cual fue el "*supplemental liability protection*" ofrecido. Véase nota al pie de página núm. 17.

[3] Apéndice de la Petición de *Certiorari*, pág. 125. Véase, *Ruiz v. New York Dept. Stores*, 146 D.P.R. 353 (1998).

AC-2011-121

que fuera autorizado por el asegurado nombrado a utilizar el vehículo y no existiera una exclusión por arrendamiento.[4]

A *contrario sensu*, Universal negó responsabilidad. Indicó que Enterprise Rent-A-Car era el único asegurado bajo el Contrato de Seguro. Apuntó que la póliza cubría solamente los daños causados por el asegurado nombrado, sus empleados y funcionarios cuando utilizaban el automóvil asegurado en gestiones de la empresa; no así los causados por un arrendatario. Planteó, a su vez, que el señor Negrón renunció a la cubierta ofrecida en el Contrato de Arrendamiento. Además, argumentó que aunque se concluyera que el conductor era un asegurado adicional bajo la Cláusula Colectiva, le aplicaba la exclusión por responsabilidad contractual. Arguyó que esta excluía aquellas obligaciones asumidas por el asegurado en el ámbito contractual; en este caso el Contrato de Alquiler.[5]

Mediante una Resolución de 29 de abril de 2011, el Tribunal de Primera Instancia determinó que el señor Negrón era un asegurado adicional de Universal. Posteriormente el Tribunal de Apelaciones denegó la expedición del auto de *certiorari* peticionado. Entendió el tribunal *a quo* que la póliza disponía como asegurado a cualquier otra persona que

---

[4] El Sr. Santiago Negrón contaba con una póliza emitida por la Cooperativa de Seguros Múltiples. La Cooperativa de Seguros Múltiples proveyó cubierta y emitió el pago correspondiente a Enterprise Rent-A-Car. Además, suscribió un Contrato de Transacción con la Sra. Olga I. Natal Cruz.

[5] Universal hace alusión a la Cláusula núm. 8 del Contrato de Alquiler. Véanse págs. 23 y 24.

no fuera el asegurado nombrado mientras utilizaba el automóvil con permiso de este y que el Contrato de Arrendamiento no formaba parte de la póliza.

Inconforme, Universal acude ante nos mediante recurso de apelación y señala los errores siguientes:

(1) Erró el Tribunal de Apelaciones y el Tribunal de Instancia al resolver contrario a derecho que el codemandado Santiago Negrón es un asegurado adicional en la póliza de seguros expedida por la compareciente a favor de Enterprise Rent-A-Car, a pesar de ser un hecho incontrovertido que el Sr. Negrón expresamente declinó la póliza de UNICO por poseer la cubierta que le ofrecía su aseguradora, Cooperativa de Seguros Múltiples.

(2) Erró el Tribunal de Apelaciones y el Tribunal de Instancia al ignorar la exclusión "contractual liability" contenida en la póliza comercial expedida por UNICO a favor de Enterprise Rent-A-Car.

(3) Erró el Tribunal de Apelaciones y el Tribunal de Instancia al ignorar las cláusulas contractuales contenidas en el contrato de alquiler a corto plazo suscrito por el conductor, Sr. Santiago Negrón, documento estipulado por las partes.

El 30 de marzo de 2012, acogimos el recurso presentado como *certiorari* y expedimos. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.

## II

De umbral, debemos examinar el posible desplazamiento de la ley local por una ley federal, así como su efecto sobre la controversia presentada.

AC-2011-121

En el caso de autos, Universal indica que en la medida que no existe una reclamación contra una empresa de vehículos de alquiler según lo dispuesto en la Ley Púb. Núm. 109-59, de 10 de agosto de 2005 (119 Stat. 1935), 49 U.S.C. sec. 30101 *et seq.*, conocida en inglés como *Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users* (SAFETEA-LU), resulta forzoso concluir que la reclamación tampoco procede contra la aseguradora. *A contrario sensu*, la parte recurrida expresa que la disposición federal a la que la aseguradora hace referencia no aplica al caso de autos.

Es norma reiterada que el derecho estatal cede ante el principio de la supremacía de las leyes del Congreso. *Vega v. Soto*, 164 D.P.R. 113 (2005). En virtud de la Cláusula de Supremacía, Art. VI, Const. EE.UU., L.P.R.A., Tomo I, ed. 2008, se ha elaborado la Doctrina del Campo Ocupado para evitar conflictos regulatorios y fomentar una política uniforme sobre una materia específica. Esta doctrina postula que la ley federal tiene supremacía sobre la legislación de un estado cuando la ley federal así lo expresa o cuando no cabe duda de que la intención federal es reglamentar la totalidad de la materia. *SLG Semidey Vázquez v. ASIFAL*, 177 D.P.R. 657, 678 n. 20 (2009), citando a M. Velázquez Rivera, *Validez Legal de la Reglamentación por la Asamblea Legislativa de la Importación, Venta y Posesión en Puerto Rico de Perros de*

AC-2011-121

*la Raza Pit Bull*, 63 (Núm. 1) Rev. Jur. U.P.R. 1, 16 (1994); *S.L.G. v. S.L.G.*, 150 D.P.R. 171 (2000). Examinemos entonces las disposiciones federales y estatales pertinentes.

El Art. 21.01 de la Ley 22-2000, según enmendada, conocida como Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5621, en esencia dispone que el dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación del vehículo interviniendo culpa y negligencia. Esta responsabilidad incluye los daños causados por una tercera persona que obtenga la *posesión* mediante la autorización expresa o tácita del dueño.[6]

Así las cosas, en el 2005 se aprobó la Ley Púb. Núm. 109-59, *supra*. Esta ley contiene la Sec. 30106, también conocida como "The Graves Amendment" (en adelante Sec. 30106) que dispone en su primer inciso que:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—

---

[6] Véase *Cordero Santiago v. Lizardi Caballero,* 89 D.P.R. 150 (1963), sobre el desarrollo legal de la responsabilidad del dueño de un vehículo de motor hasta la vigencia de la Sec. 13-101 de la Ley Núm. 141 de 20 de julio de 1960, y antes de la aprobación de la Ley 22-2000, según enmendada, 9 L.P.R.A. sec. 5621. Véase además, *Rodríguez v. Ubarri, Miranda*, 142 D.P.R. 168 (1996).

AC-2011-121

> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner). 49 U.S.C. sec. 30106(a).

La Sec. 30106 inequívocamente expresa la intención del Congreso de desplazar toda ley o jurisprudencia estatal que imponga responsabilidad vicaria a los dueños de vehículos de alquiler o de arrendamiento financiero por daños causados durante el periodo de alquiler o de arrendamiento financiero de un vehículo.[7] Esto, siempre y cuando, no se deba a la negligencia o culpa del propio dueño. No obstante, la Sec. 30106 no desplaza aquellas leyes estatales que impongan "responsabilidad financiera" o requisitos de seguro al dueño de un vehículo por el privilegio de registrarlo y operarlo, como tampoco la responsabilidad de empresas de alquiler o arrendamiento financiero por no cumplir con su responsabilidad financiera o los seguros requeridos.[8]

---

[7] Véase además, 49 U.S.C. 30103(b).

[8] El segundo y tercer inciso de la Sec. 30106 de la Ley Púb. Núm. 109-59, de 10 de agosto de 2005 (119 Stat. 1935), 49 U.S.C. sec. 30106, conocida en inglés como *Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users* (SAFETEA-LU), disponen que:

> (b) Financial responsibility laws. Nothing in this section supersedes the law of any State or political subdivision thereof--
>
> (1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or
>
> (2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.

AC-2011-121

Dispuesto lo anterior por el ordenamiento federal, en el 2010 nuestra Asamblea Legislativa enmendó el Art. 21.01 de la Ley 22-2000, *supra*, para cumplir con este mandato.[9] Este artículo ahora dispone en lo pertinente que:

> En ausencia de negligencia o conducta criminal, el dueño de un vehículo de motor que se dedica al alquiler de vehículos de motor no será responsable de los daños ocasionados a terceros como resultado del uso, operación o posesión del vehículo de motor por un arrendatario bajo la vigencia de un contrato de alquiler a corto o largo plazo.

Sin embargo, la disposición federal no conlleva la interpretación que sugiere Universal, es decir, que la reclamación no procede contra la aseguradora.[10] La

---

(c) Applicability and effective date. Notwithstanding any other provision of law, this section shall apply with respect to any action commenced on or after the date of enactment of this section [enacted Aug. 10, 2005] without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment.

[9] Previamente, la Ley 132-2004 enmendó el Art. 21.01 de la Ley 22-2000, 9 L.P.R.A. sec. 5621 (2006). En lo pertinente disponía que: "Las disposiciones de esta sección no aplican a vehículos de motor de alquiler mientras sea un vehículo de motor manejado por quien lo alquila o arrienda a corto o largo plazo en el momento de un accidente, los cuales se regirán por la Ley Núm. [76] de [13] de [agosto] de [1994]".

No obstante, con posterioridad a los hechos del presente caso, La Ley 230-2010 enmendó nuevamente el artículo. Al así hacer, la Asamblea Legislativa expresó que: "Al examinar el alcance de la Ley Núm. 76, supra, se observa que no se menciona la responsabilidad de una persona que alquila un vehículo de motor y que por su negligencia o conducta criminal provoca daños y perjuicios a otra persona". Añadió que "[d]el lenguaje de la Ley Federal SAFETEA-LU se desprende el mandato expreso del Congreso de prohibir específicamente nuestra ley local, ya que la primera está sustancialmente en conflicto con la segunda, y ante esto, no pueden armonizarse o coexistir al mismo tiempo". Exposición de motivos, Ley 230-2010.

[10] "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. Sec. 1012. Véase, *San José Realty, S.E. v. El Fénix de P.R.*, 157 D.P.R. 427 (2002). Al respecto comenta R.H. Jerry, II: "Congress might on some occasions impose some regulations on the

AC-2011-121

controversia de este pleito se limita a la responsabilidad, si alguna, que tiene Universal para con el señor Negrón de concluirse que este es un asegurado adicional de la póliza. En ningún momento se está responsabilizando a Enterprise por ser el dueño del vehículo en cuestión. No debe confundirse, la ausencia de responsabilidad del dueño del vehículo en un negocio de arrendamiento y la responsabilidad de la compañía aseguradora bajo una Cláusula Colectiva.

Una situación similar se presentó recientemente ante un foro apelativo del Estado de Florida. En *Patterson v. FirstLease Inc.*, 37 Fla. L. Weekly D 2452 (2012), una menor fue impactada por un camión. Este era conducido por un empleado de Drop Ship Direct, Inc., que a su vez lo había alquilado a FirstLease, Inc. FirstLease, Inc. tenía un seguro con Harco National Insurance Company. Luego de varios trámites procesales, la parte demandante solicitó una Sentencia Declaratoria contra la compañía aseguradora en la que se determinara que la póliza incluía como asegurados al conductor y al patrono-arrendatario. Esto pues, la póliza designaba a FirstLease como asegurado nombrado así como a cualquiera mientras utilizara con su permiso un automóvil asegurado.

---

insurance business, but unless it were clear that Congress specifically intended to do so, regulation would be the prerogative of the states". 1 New Appleman on Insurance Law Library Edition, Sec. 1.03[4][a].

Aunque existía un endoso que limitaba la cubierta al arrendatario, este no cumplía con los requisitos estatutarios para ello. Ante esta situación la aseguradora argumentó que la Sec. 30106 no permitía que se estableciera responsabilidad contra el dueño del vehículo de alquiler bajo el principio de responsabilidad vicaria y que a su vez, la aseguradora se beneficiaba de dicha disposición. Finalmente, el tribunal concluyó que la Sec. 30106 no aplicaba puesto que la acción no era en contra del dueño del vehículo sino contra el arrendatario y su empleado. En ese caso, ambos eran usuarios autorizados y por lo tanto, asegurados.

Examinado lo anterior, procedemos a analizar el derecho aplicable a la controversia ante nos.

## III

### A. El Contrato de Seguro

En Puerto Rico, el negocio de seguros está investido de un alto interés público debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos. *Maderas Tratadas v. Sun Alliance et al.*, res. el 12 de junio de 2012, 2012 T.S.P.R. 101, 185 D.P.R. __ (2012); *Integrand Assurance v. CODECO et al.*, res. el 28 de marzo de 2012, 2012 T.S.P.R. 59, 185 D.P.R. __ (2012); *Jimenez López et al. v. SIMED*, 180 D.P.R. 1, 8 (2010); *S.L.G. Francis-Acevedo v. SIMED*, 176 D.P.R. 372, 384 (2009). Véase además, R. Cruz, Derecho de Seguros,

AC-2011-121

San Juan, Ed. JTS, 1999, pág. 6. Es por ello que ha sido reglamentado extensamente por el Estado mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como Código de Seguros de Puerto Rico, 26 L.P.R.A. Sec. 101, *et seq.*, y el Código Civil rige de manera supletoria. *S.L.G. Francis-Acevedo v. SIMED*, supra.

Este contrato de gran complejidad e importancia es definido como aquel por el que una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable de producirse un suceso incierto previsto en el mismo. 26 L.P.R.A. sec. 102. Por lo tanto, su propósito es indemnizar y proteger al asegurado transfiriendo el riesgo a la aseguradora de ocurrir el evento especificado en el contrato. *Integrand Assurance v. CODECO* et al., supra; *S.L.G. Francis-Acevedo v. SIMED*, supra; *Echandi Otero v. Stewart Title*, 174 D.P.R. 355 (2008).

Los términos del contrato de seguro están contenidos en la póliza. *Maderas Tratadas v. Sun Alliance et al.*, supra. La póliza es el instrumento escrito en que se expresa un contrato de seguro y es ley entre las partes. 26 L.P.R.A. sec. 1114(1); *Integrand Assurance v. CODECO* et al., supra; *Torres v. E.L.A.*, 130 D.P.R. 640 (1992). Por ello, "ningún convenio que esté en conflicto con el contrato de seguro o que lo enmiende o amplíe será válido a menos que fuere por escrito y se hiciere formar parte de la

póliza". 26 L.P.R.A. sec. 1118(1). Por lo tanto, para modificar una póliza de seguro válidamente se requiere un endoso al margen o al dorso de la póliza añadiendo palabras en el cuerpo del contrato, un documento aparte que exponga que se adjunta y que se hace formar parte de la póliza, o la redacción de un nuevo contrato que recoja el cambio convenido.[11] S.*L.G. Francis-Acevedo v. SIMED*, supra, pág. 390.

**B. Las reglas de hermenéutica**

En cuestión de hermenéutica, el Código de Seguros dispone que los contratos de seguro se interpretan globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de esta.[12] 26 L.P.R.A. sec. 1125. A su vez, si los términos del contrato de seguro son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Art. 1233 del Código Civil, 32 L.P.R.A. sec. 3471. Véase además, *Martínez Pérez v. U.C.B.*, 143 D.P.R. 554 (1997); *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659 (1986). Sin embargo, al reconocer que

---

[11] "Un endoso es el acuerdo por escrito que se adhiere a la póliza para que forme parte del contrato con el propósito de alterar, ampliar o restringir la cubierta que dispone la póliza". *Echandi Otero v. Stewart Title*, 174 D.P.R. 355, 377 esc. 13 (2008).

[12] De igual forma, los principios generales de hermenéutica esbozados en el Código Civil son supletorios. *Maderas Tratadas v. Sun Alliance et al.*, res. el 12 de junio de 2012, 2012 T.S.P.R. 101, 185 D.P.R. __ (2012); *Banco de la Vivienda v. Pagán Ins. Underwriters*, 111 D.P.R. 1 (1981).

el contrato de seguros es redactado en su totalidad por el asegurador, hemos expresado que las cláusulas oscuras o ambiguas se interpretarán a favor del asegurado. Por el contrario, en ausencia de ambigüedad, las cláusulas del contrato son obligatorias. *S.L.G. Francis-Acevedo v. SIMED*, supra; *Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 D.P.R. 714 (2003); *Domínguez v. GA Life,* 157 D.P.R. 690 (2002).

No obstante, la labor interpretativa no culmina ahí. Para determinar cuáles son los riesgos cubiertos por un contrato de seguro también debemos examinar si el contrato incluye una cláusula de exclusión. *S.L.G. Francis-Acevedo v. SIMED*, supra; *Echandi Otero v. Stewart Title*, supra; *Monteagudo Pérez v. E.L.A.*, supra, pág. 21. Las cláusulas de exclusión operan para limitar la cubierta establecida en el acuerdo general de cubierta. *S.L.G. Francis-Acevedo v. SIMED*, supra; *Monteagudo Pérez v. E.L.A.*, supra, pág. 21; *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991). Por ello, estas son desfavorecidas y serán interpretadas restrictivamente. Empero, la aseguradora no responderá por riesgos expresamente excluidos y que apliquen a determinada situación.[13] *Maderas Tratadas v. Sun Alliance et al.*, supra; *S.L.G. Francis-Acevedo v. SIMED*, supra. Sin embargo, cabe precisar que las dudas serán resueltas de modo que se cumpla con el propósito de la

---

[13]Cada exclusión se lee en función del acuerdo general de cubierta e independiente de las restantes exclusiones. *Meléndez Piñero v. Levitt & Sons of P.R.*, supra, pág. 548.

póliza, siendo este proveer protección al asegurado. *Maderas Tratadas v. Sun Alliance et al.*, supra; *Integrand Assurance v. CODECO* et al., supra; *Barreras v. Santana,* 87 D.P.R. 227 (1963).

### C. La Cláusula Colectiva y el seguro de vehículos

Sobre la figura del asegurado, hemos expresado que el término "asegurado nombrado" se refiere a las personas específicamente designadas en el contrato. De igual forma, cuando el término "asegurado" es utilizado sin cualificación, este incluye no solamente al asegurado nombrado, sino que también a las otras personas que estén protegidas por la cláusula colectiva. *Sánchez v. Soler Fajardo*, 87 D.P.R. 432 (1963). En *Vélez v. García Commercial*, 100 D.P.R. 645, 649-650 (1972), expresamos que:

> La llamada *omnibus clause* o cláusula colectiva no es otra cosa que la cláusula que define el término "asegurado". Véanse, 12 Couch *On Insurance* 2d, Sec. 45:291. Esta cláusula puede incluir como asegurado, además de a la parte contratante, a cualquier otra persona nombrada en la cláusula, incluyendo contratistas independientes, Id. Sec. 45:305; *Sánchez v. Soler Fajardo*, 87 D.P.R. 432, 439 (1963). Las personas o clases de personas nombradas en dicha cláusula están cubiertas por la póliza aunque el asegurado contratante no tenga responsabilidad legal por los actos de dichas personas. Id. Sec. 45:293. *Pérez v. Maryland Casualty Co.*, 78 D.P.R. 475, 484 (1955).

En las pólizas de automóvil, las cláusulas colectivas tienen el efecto de designar como asegurado a toda persona que use un vehículo cubierto en esta con el permiso del asegurado específicamente nombrado en ella. Particularmente

en las pólizas comerciales, el asegurado nombrado es el negocio y no un individuo. 6 *New Appleman on Insurance Law Library Edition*, Secs. 67.04[1] y [2]. Su permiso puede ser expreso o tácito. *Sánchez v. Soler Fajardo*, supra; *Pérez Escolar v. Collado*, 90 D.P.R. 806 (1964).

En esencia, el seguro de vehículo tiene como propósito proteger al asegurado contra cualquier pérdida, gasto o responsabilidad por la pérdida o los daños causados a personas o propiedad, resultantes de la posesión, conservación, o uso de un vehículo.[14] 26 L.P.R.A. sec. 407(1). Todo ello hasta el límite de la póliza. 7A *Couch on Insurance 3D*, Sec. 108:11; 6 *New Appleman on Insurance Law Library Edition*, Sec. 63.01. La póliza de automóvil del caso de autos presenta una cubierta por responsabilidad civil pública, es decir, una cubierta diseñada para proteger al asegurado frente a reclamaciones instadas por terceros por los daños ocasionados a estos o su propiedad en el ámbito de la responsabilidad extracontractual. *Maderas Tratadas v. Sun Alliance et al.*, supra.

---

[14] El seguro de vehículos "[e]s el seguro contra la pérdida o los daños causados a un vehículo terrestre o aeronave o cualquier animal de tiro o de montura, o de propiedad mientras estuviere en los mismos o sobre los mismos, o cargándose en los mismos o descargándose de ellos, por cualquier riesgo o causa, y contra cualquier pérdida, gasto o responsabilidad por la pérdida o los daños causados a personas o la propiedad, resultantes de la posesión, conservación, o uso de cualquiera de dichos vehículos, aeronaves o animales, o incidentales a los mismos". 26 L.P.R.A. sec. 407(1).

Como hemos señalado "en la práctica no existe un seguro que cobije toda la responsabilidad en la que puede incurrir una persona. Lo que existe son seguros de responsabilidad civil que cubren determinadas actividades del asegurado, capaces de producir daños". *Soc. de Gananciales v. Serrano*, 145 D.P.R. 394, 399 (1988); *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991).

Cabe señalar que como toda póliza, las pólizas comerciales de auto se encuentran supeditadas a lo expresado en la póliza y en la cláusula colectiva, y no así en aquellos contratos que no forman parte de ella, tales como los contratos de alquiler. Véanse, 12 Couch on Insurance, Sec. 170:3; 6C Appleman, *Insurance Law and Practice*, sec. 4453, p. 523-26; *Meridian Mut. Ins. Co. v. Gulf Ins. Co.*, 174 Ind. App. 51 (1977).

Examinado el derecho aplicable, procedemos a aplicar el derecho a los hechos.

**IV**

Por estar los señalamientos de error estrechamente relacionados, los discutiremos en conjunto.

En el caso de autos no hay controversia en cuanto a que Enterprise es el dueño del vehículo en cuestión, así como que es la parte contratante y asegurado nombrado bajo la póliza 09-518-0192957-1/000. La póliza estaba vigente a la fecha del accidente. Tampoco está en controversia si el dueño del vehículo tiene responsabilidad por los daños causados por el arrendatario durante el periodo de alquiler.

No obstante, la controversia gira en torno a si existe cubierta para el arrendatario y conductor del vehículo como asegurado bajo la Cláusula Colectiva para responder por su responsabilidad frente a terceros. Al respecto, Universal indica que la póliza no incluye al señor Negrón como

asegurado por ser un arrendatario y no un empleado o funcionario de Enterprise que operaba el vehículo asegurado en gestiones de la empresa. También señala que no hay cubierta por haber declinado la póliza en el Contrato de Arrendamiento, y que aun de considerarse asegurado le aplicaría la exclusión de responsabilidad contractual.

Es norma reiterada que ningún convenio que enmiende, amplíe o esté en conflicto con el contrato de seguro será válido de no constar por escrito y formar parte de la póliza. 26 L.P.R.A. sec. 1118(1). Esto pues, el Código de Seguros "interesa un contrato de seguro completo en sí mismo, que contenga todo lo acordado entre las partes y que sea por escrito". *The London Assurance v. Tribunal Superior*, 95 D.P.R. 305, 310 (1967). El que estemos ante una póliza comercial de auto no varía esta norma. Por lo tanto, concluimos que el rechazo a pagar por una cubierta suplementaria en un Contrato de Arrendamiento de forma alguna modifica el contrato de seguro. Recordemos que Universal no forma parte del Contrato de Arrendamiento, no se hace referencia a este en la póliza ante nos y hasta desconocemos el contenido de la cubierta declinada en el contrato de alquiler. R.H. Long, *supra*, Vol. 1, Sec. 1.07[2][d].

Debemos entonces analizar la totalidad de la póliza. De sus términos, condiciones y exclusiones ser claros,

específicos y no den margen a diferentes interpretaciones, así debemos aplicarlos.

Primero examinaremos si el señor Negrón es un asegurado bajo la Cláusula Colectiva. De contestar en la afirmativa, analizaremos si existe alguna exclusión aplicable como alega la aseguradora.

La Cláusula Colectiva de la póliza especifica que:

1. **Who is an insured**

   The following are "insureds:"
   a. You for any covered "auto"
   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
      (1)  The owner or anyone else from whom you hire or borrow a covered "auto"…
      (2)  Your employee if the covered "auto" is owned by that employee or a member of his or her household.
      (3)  Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.
      (4)  Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property from a covered "auto".
      (5)  A partner of yours for a covered "auto" owned by him or her or a member of his or her household.
      Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an "insured" but only to the extent of that liability. Apéndice de la Petición de *Certiorari*, pág. 61.

La Cláusula Colectiva claramente y sin ambigüedad identifica como asegurados a la empresa de vehículos de alquiler, y a cualquiera a quien esta diera permiso para utilizar un "auto asegurado".[15] Sus términos y condiciones

---

[15] Véase nota al pie de página núm. 1.

AC-2011-121

no distinguen o excluyen al arrendatario de un vehículo. Por lo tanto, de los términos de la póliza comercial de automóvil expedida a la empresa de vehículos de alquiler no podemos interpretar que el permiso aludido no es aplicable al alquiler de autos y que solamente cobija a los empleados y funcionarios de la empresa en la operación del negocio y no al arrendatario como pretende Universal. Véase, *Sánchez v. Soler Fajardo*, supra. Véase además, *CNA Casualty of P.R. v. Torres Díaz*, 141 D.P.R. 27, 41 (1996). Si la intención hubiera sido excluir el permiso concedido por un arrendamiento, lo debió hacer constar expresamente, pues mientras la aseguradora no responde por los riesgos expresamente excluidos, tiene la obligación de establecer claramente los riesgos por los que viene obligado a responder. *S.L.G. Francis-Acevedo v. SIMED*, supra; *Meléndez Piñero v. Levitt & Sons of P.R.*, supra, pág. 547.

A la luz de la Cláusula Colectiva de la póliza, así como de sus excepciones, que no son aplicables al caso de autos, el señor Negrón obtuvo el permiso de Enterprise para operar el vehículo. Por lo tanto, el señor Negrón es un asegurado por la póliza aunque Enterprise no tenga responsabilidad legal por sus actos. Universal está obligado a pagar las cantidades que el asegurado legalmente deba pagar como daños a la persona o propiedad aplicables causados por un accidente y resultantes del uso de un auto cubierto. Claro está, esto siempre y cuando la Cláusula de

Exclusión por Responsabilidad asumida bajo contrato o acuerdo no sea de aplicación al caso de autos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881 (1994). Esto pues, la extensión de la cubierta se mide a base de los riesgos que permanecen garantizados después de determinarse cuáles son sus exclusiones. Determinado que el señor Negrón es asegurado bajo la Cláusula Colectiva, examinemos las exclusiones del Contrato de Seguro.

Universal sostiene que aun de concluirse que el señor Negrón es un asegurado bajo la Cláusula Colectiva, no debemos ignorar la cláusula contenida en el Contrato de Alquiler mediante la que el arrendatario se responsabilizó por las reclamaciones de responsabilidad de terceros al dueño. Arguye que esta cláusula se extiende a la aseguradora. Sostiene que la asunción de responsabilidad del arrendatario corresponde a una exclusión contractual reconocida en la póliza.

La exclusión sobre la cual Universal dirige nuestra atención dispone que:

> **Exclusions**
>
> This insurance does not apply to any of the following:
> …
> **2. Contractual**
>    Liability assumed under any contract or agreement.
>    But this exclusion does not apply to liability for damages:
>    a. Assumed in a contract or agreement that is an "insured contract;" or
>    b. That the "insured" would have in the absence of the contract or agreement.

AC-2011-121

Previamente hemos tenido la oportunidad de examinar este tipo de cláusula a la que hemos llamado cláusulas de exclusión contractual o de asunción de responsabilidad bajo contrato o acuerdo (*contractual exclusion clauses* o *Contractual Assumed Liability Exclusion* en inglés). Véanse, *Meléndez Piñero v. Levitt & Sons of P.R.*, supra, pág. 544; *Vega v. Pepsi-Cola Bot. Co*, 118 D.P.R. 661 (1987); *M.A. Carib. Corp. v. Carib. R.. Inc.*, 115 D.P.R. 681 (1984) (Per Curiam). Véase además, *Scope and Effect of Clause in Liability Policy Excluding from Coverage Liability Assumed by Insured under Contract not Defined in Policy, such as one of Indemnity,* 63 A.L.R.2d 1122 (1959).

En *Vega v. Pepsi-Cola Bot. Co.*, supra, citando a 12 *Couch on Insurance 2d* Sec. 44A:36, pág. 57 y ss. (1981), expresamos que este tipo de cláusula no es ambigua. Su propósito de exclusión es claro pues limita la cubierta de la póliza al campo de la responsabilidad extracontractual del asegurado y excluye las obligaciones asumidas por el asegurado en el ámbito contractual. 7A Couch on Insurance 3D, Sec. 108:15. Sin embargo, "la cláusula de exclusión contractual [no] libera a las compañías de seguros cuando la obligación asumida por el asegurado es coextensiva con la obligación legal de la cual sería responsable ordinariamente". *M.A. Carib. Corp. v. Carib. R., Inc.*, supra, pág. 684 (1984). Véase además, 1 R.H. Long, *The Law of Liability Insurance*, Sec. 1.07[2][a], (1997); 63

AC-2011-121

A.L.R.2d 1122, 1123 (1959). De igual forma, esta cláusula no se refiere a los incumplimientos de contrato del asegurado. *Meléndez Piñero v. Levitt & Sons of P.R.*, supra, págs. 544-548. Véase además, B.R. Ostrager y T.R. Newman, *Handbook on Insurance Coverage Disputes*, 10 ed., Nueva York, Ed. Aspen Law and Business, 2000, Sec. 7.05, págs. 405-406.

El Contrato en controversia contiene las dos (2) excepciones más comunes a la exclusión de responsabilidad contractual: (i) la responsabilidad que el asegurado tendría en ausencia de contrato o acuerdo y (ii) aquella asumida en un Contrato asegurado.[16]

Universal alega que el señor Negrón asumió en el Contrato de Arrendamiento el tipo de responsabilidad que excluye la Cláusula de Exclusión Contractual. En la Cláusula Núm. 8 del Contrato de Arrendamiento el señor Negrón acordó:

> …defende[r], indemniza[r] y ha[cer] al Dueño libre de toda pérdida, responsabilidad, daño, herida, reclamación, demanda, costo, honorario de abogado y otros gastos incurridos por el Dueño de cualquier forma por esta transacción de alquiler o por el uso del Vehículo por cualquier persona, incluyendo reclamaciones o responsabilidades a terceros. …[E]n cualquier caso, el Arrendatario tendrá la responsabilidad final hacia el dueño por dichas pérdidas. Esta obligación podrá limitarse si el arrendatario compra el DW opcional y/o el SLP opcional. Véase los párrafos 16 y 17 para más información sobre el DW opcional

---

[16] La póliza define el término "insured contract" como "[t]hat part of any contract or agreement entered into, as part of your business, by you or any of your employees pertaining to the rental or lease of any "auto". Apéndice de la Petición de *Certiorari*, Pág. 83.

AC-2011-121

y el SLP opcional.[17] Apéndice de la Petición de *Certiorari*, pág. 96.

En el mundo de negocios es común que una parte se responsabilice por contrato de la responsabilidad de otro en lo que se conoce como "acuerdo de liberación de responsabilidad" (*hold harmless agreement* o *indemnity clause*). *Meléndez Piñero v. Levitt & Sons of P.R.*, supra, pág. 553. Mediante este tipo de acuerdo una parte se compromete o asume la obligación de reembolsar o defender a otra de reclamaciones que le sean traídas por un tercero y de las que no sería responsable de no existir el contrato. R.H. Long, *op. cit.*, Vol. 1, Sec. 1.07[2][a]; 63 A.L.R.2d 1122, 1123 (1959). Tiene como propósito transferir el riesgo de pérdida económica entre los contratantes. Comment, C. Pizarro, *Judicial Interpretation of Indemnity Clause*, 48 La. L.Rev. 169 (1987). Es particularmente a los acuerdos de liberación de responsabilidad que se ha aplicado consistentemente la exclusión contractual. B.R. Ostrager y T.R. Newman, pág. 405. Por estas razones, su inclusión en la póliza conlleva generalmente un aumento en la prima para los seguros de los contratantes. *M.A. Carib. Corp. v. Carib. R., Inc.,* supra, pág. 684. Véase además, B.R. Ostrager y T.R. Newman, *op. cit.,* pág. 405; R.H. Long, *op. cit.,* Vol. 1, Sec. 1.07[2][d].

---

[17] Cabe señalar que el párrafo 17 (sobre el SLP opcional) del Contrato de Alquiler al que se refiere la cláusula transcrita no fue incluido en el apéndice del recurso. Por lo tanto, no consta en el expediente información alguna sobre el *supplemental liability protection* ofrecido y al que hace referencia la parte peticionaria.

Al examinar la cláusula transcrita del Contrato de Arrendamiento entre Enterprise y el señor Colón concluimos que este es un acuerdo de liberación de responsabilidad. Sin embargo, este convenio no se extiende a la aseguradora, pues no es de aplicación a la reclamación que se le presenta a Universal. En ningún momento se le ha exigido a Universal que indemnice al dueño del auto alquilado por alguna reclamación de un tercero, con relación al alquiler. *A contrario sensu*, a Universal se le demanda para que indemnice a un tercero por los daños sufridos tras la alegada negligencia del conductor como asegurado; negligencia de la que el conductor sería responsable ordinariamente. Como tal, esta situación queda exceptuada de la exclusión. Por lo tanto, la Cláusula de Exclusión Contractual no es aplicable y no limita la cubierta del señor Negrón.

Analizada la controversia en su totalidad, resolvemos que la Ley Púb. Núm. 109-59, *supra*, fue redactada para liberar de responsabilidad vicaria a los dueños de vehículos de alquiler o de arrendamiento financiero por daños causados durante el término de alquiler o arrendamiento financiero. A su vez, del lenguaje de la Sec. 30106 no podemos concluir, como sugiere Universal, que en la medida en que no existe una reclamación contra el dueño del vehículo, automáticamente la reclamación no procederá contra la compañía aseguradora contratada por

AC-2011-121

este. Eso no elimina los riesgos relacionados con el uso del automóvil asegurado. La existencia de cubierta dependerá del examen de la totalidad de la póliza en cuestión. Aclarado ese aspecto, resolvemos que en el caso de autos la redacción de la Cláusula Colectiva de la póliza comercial de automóvil examinada incluye como asegurado al señor Negrón como persona a la que Enterprise dio permiso a utilizar un auto asegurado. Por otro lado, al estudiar la totalidad de la póliza observamos que no se hizo formar como parte de esta ningún endoso o exclusión que dispusiera su inaplicabilidad cuando el arrendatario declinaba la compra de la cubierta suplementaria. Por consiguiente, el señor Santiago Negrón es un asegurado y su riesgo no ha sido limitado por exclusión alguna.

## V

De conformidad con lo anterior, confirmamos la determinación recurrida. Se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos de conformidad con la presente determinación.

Se dictará sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Olga I. Natal Cruz<br><br>    Recurrida<br><br>        v.<br><br>Santiago Negrón, et al.<br><br>    Peticionarios | AC-2011-0121 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 7 de junio de 2013.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, confirmamos la determinación recurrida y se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos de conformidad con la presente determinación.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente y hace constar la expresión siguiente a la que se une la Juez Asociada señora Rodríguez Rodríguez:

> "El Juez Presidente señor Hernández Denton disiente por entender que la determinación tomada por una mayoría de este Tribunal tiene el efecto de desvirtuar la ley federal y estatal que expresamente eximen de responsabilidad vicaria a las compañías arrendadoras de vehículos de motor. Tanto la Ley Púb. Núm. 109-59, de 10 de agosto de 2005, 49 U.S.C. sec. 30101 *et seq.*, como la Ley 22-200, 9 L.P.R.A. sec. 5001 *et seq.*, limitan la responsabilidad vicaria de los dueños de vehículos de motor cuando estos son compañías

AC-2011-121

arrendadoras de vehículos. Considerando que en virtud de dichas leyes el asegurado no tiene responsabilidad, es forzoso concluir que la aseguradora tampoco. No es posible imponer responsabilidad a la aseguradora más allá de la responsabilidad que pudiera atribuirse a la asegurada. Consiguientemente, es innecesario que las pólizas como la del caso de autos contengan cláusulas que liberen de responsabilidad a las compañías aseguradoras pues estas ya están relevadas por ley".

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo